UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOHN TODD WILLIAMS,

                Supervisee.

No. 14-cr-784 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

        On November 10, 2016, the Court sentenced John Todd Williams ("Supervisee") to five years' imprisonment, to be followed by three years' supervised release. (Doc. No. 215 at 2–3.) The Court also ordered that Supervisee pay restitution in the amount of $3,995,443.53 to the victims of the charged offense (Doc. No. 217 at 1), and that he forfeit $3,995,443.53 as proceeds of his criminal activity (Doc. No. 216 at 2). Supervisee has since completed his term of imprisonment and was originally scheduled to conclude his term of supervised release on March 26, 2022.

        Shortly before that date, however, the Court learned from Probation that Supervisee "ha[d] thus far paid less than $500 toward his restitution, which [still] carrie[d] an outstanding balance of $3,994,982.53." (Doc. No. 292 at 1.) Accordingly, the Court ordered that Supervisee's term of supervised release be extended by ninety days (*see* Judicial Response Form of March 24, 2022 (filed under seal with Probation and forwarded to both parties)), and ordered the government to "advis[e] the Court of the efforts, if any, it ha[d] undertaken to collect on the restitution and forfeiture orders, and how it plans to collect the unpaid balance from Supervisee and the coconspirators with whom he is jointly and severally liable" (Doc. No. 292 at 1). The Court also gave Supervisee leave "to file a response to the government's submission" if he so

"wish[ed]." (*Id.*; *see also* Doc. No. 295 at 1 (sua sponte extending Supervisee's time to respond from one week after the government's filing deadline to two weeks).)  Supervisee's term of supervised release is currently scheduled to terminate on today's date, June 24, 2022.  (*See* Doc. No. 292 at 1.)

The Court is now in receipt of the government's April 14, 2022 letter "appris[ing] the Court of the status of payments made by [Supervisee] and his co-conspirators toward their restitution and forfeiture obligations."  (Doc. No. 296 at 1.)  The Court is also in receipt of Supervisee's April 6, 2022 submission expressing dissatisfaction with the ninety-day extension of his term of supervised release.  (No. 20-cv-1554, Doc. No. 36.)

Let it be clear:  contrary to Supervisee's baseless speculation, there is no "scheme . . . . to entrap [him]," and the Court did not extend his term of supervised release "to buy more time . . . to entrap [him]."  (*Id.* at 2.)  The Court extended Supervisee's term of supervised release out of serious concern for the *6,005 victims* of the fraudulent and coercive debt-collection scheme orchestrated by Supervisee.  (PSR ¶¶ 14, 17.)  These 6,005 victims are real people.  (*See id.* ¶¶ 28–38 (describing individual victims' stories).)  They were particularly "vulnerable," both financially and otherwise (Doc. No. 218 at 65), when Supervisee and his coconspirators "trick[ed] and coerce[d] [them] into paying" not only "actual debts," but also "purported debts" often amounting to "significantly more money than [they] actually owed" (PSR ¶¶ 13–14). Many were already in desperate financial straits and "didn't know any better" than to give in to Supervisee's and his coconspirators' demands for money – accompanied as those demands were by false threats of arrest and incarceration that "scared the heck out of them."  (Doc. No. 218 at 65.)  They paid Supervisee and his coconspirators "whatever they had, even if it meant that

they couldn't meet rent payments, even if it meant that they had to take out other loans and other debt to pay this off," even if it meant paying out of limited funds they otherwise needed to provide for their "small children" or fulfill their families' "other [financial] responsibilities." (*Id.* at 52.) Thus, while this case was "[a]typical of fraud [cases]" in that "the harms went *beyond* money" – Supervisee's scheme caused the victims "fear," "terror," and "trauma" that "[t]hey still relive" today – it nevertheless also entailed very real harms that *were* "about money." (*Id.* at 52–53, 65 (emphasis added).) It was with the utmost seriousness that the Court expressed "hope," at sentencing, that Supervisee would "work hard to pay back the folks who . . . . are living with . . . and [have] continue[d] to live with" those harms. (*Id.* at 65.) Indeed, the Court declined "to impose a fine" in this case *because of* how important it was that "[t]he restitution should go [directly] to [the] victims." (*Id.* at 58.)

Simply put, it is unfair to Supervisee's victims that "[t]o date, [he] has paid [only] $491.00 towards his [restitution] obligation[]" (Doc. No. 296 at 1) – which still "carries an outstanding balance" in excess of $3.9 million (Doc. No. 292 at 1) – while his victims "continue to live with" the monetary harms he and his coconspirators have inflicted upon them (Doc. No. 218 at 65). The Court extended Supervisee's term of supervised release in hopes that the government might – upon the Court's prompting – come forth with a more robust plan to collect from Supervisee and his coconspirators and to make his victims whole. (*See generally* Doc. No. 292.) Unfortunately, the government's only stated plan to that effect is to keep Supervisee "entered in[] the Treasury Offset Program" – as he already is – which "provides for the transfer of a portion of funds owed by the [g]overnment to a defendant (for example, a tax refund) directly to the Clerk's Office, to be applied toward the defendant's restitution obligation, unless

3

the funds are otherwise exempt from transfer." (Doc. No. 296 at 2–3.) The Court finds it disappointing, frankly, that the government's proposed course of action is so limited.

At the same time, the Court recognizes that it would be unfair to punish Supervisee for the government's apparent lack of initiative by further extending his term of supervised release. Moreover, the Court notes that it will retain jurisdiction to enforce – and the government will retain the authority and responsibility to collect on – the restitution judgment against Supervisee even after the conclusion of his term of supervised release. (Doc. Nos. 216 at 4–5 (ordering, without qualification, that "[t]he Court shall retain jurisdiction to enforce" the forfeiture order against Supervisee); 217 at 1 (ordering that Supervisee's "liability for restitution shall continue unabated until either [he] has paid the full amount of restitution ordered . . . , or every victim has been paid the total amount of his [or her] loss from all the restitution paid by [Supervisee] and [his] co-defendants in this matter").) *See* 18 U.S.C. § 3612(c) (providing, again without qualification as to timing, that "[t]he Attorney General *shall* be responsible for collection of an unpaid fine or restitution" (emphasis added)); *United States v. Webb*, 30 F.3d 687, 690 (6th Cir. 1994) ("[A] district court's decision to [terminate or] revoke supervised release does not affect the [defendant-supervisee's underlying] obligation to pay restitution . . . ."); *see also United States v. Lussier*, 104 F.3d 32, 34 & n.3 (2d Cir. 1997) (relying on the reasoning of *Webb*).

Accordingly, IT IS HEREBY ORDERED THAT Supervisee's term of supervised release shall be allowed to terminate as scheduled on June 24, 2022, effective upon the filing of this Order. IT IS FURTHER ORDERED THAT the Supervisee's forfeiture and restitution obligations in this matter (Doc. Nos. 216, 217) shall remain under the jurisdiction of this Court and the Financial Litigation Unit of the United States Attorney's Office for the Southern District

of New York until either (1) Supervisee has paid the full amount of restitution ordered ($3,995,443.53), or (2) every victim has been paid the total amount of his or her loss from all the restitution paid by Supervisee and his co-defendants in this matter.

The Court wishes Mr. Williams good luck in his future endeavors and expresses the same hopes for him that it did at sentencing: "that [he] learn from this, that [he] live a life that is productive, that [he] never get near this kind of activity again, and that [he] work hard to pay back the folks who are harmed by this." (Doc. No. 218 at 65.)

SO ORDERED.

Dated:   June 24, 2022
         New York, New York

                                            RICHARD J. SULLIVAN
                                            UNITED STATES CIRCUIT JUDGE
                                            Sitting by Designation